UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TROF, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 09-cv-2179 |
| § | |
| J. HOWARD MARSHALL III, § | |
| Individually and as Debtor in Possession of § | |
| the Bankruptcy Estate of J. Howard § | |
| Marshall III, et al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for Summary Judgment of Defendant Wells Fargo Bank, N.A. ("Wells Fargo") (Doc. No. 76). Upon consideration of the Motion, all responses and replies thereto, and the applicable law, the Court finds and holds that the Motion should be granted.

### I.  BACKGROUND[1]

The Eleanor Pierce Stevens Irrevocable Trust (the "Trust") was formed in 1989. The primary asset held in the Trust is a debenture entitled "Marshall Petroleum, Inc., Series A, Number 3, 10% Debenture" ("Debenture"). (*See* Pl. Resp., Doc. No. 82, Ex. B.)[2] Among the beneficiaries named in the Trust is J. Howard Marshall III ("JHM"). Since November of 2003, the Trust has been administered by Wells Fargo, a national banking association having a trust department engaged in the business of administering

---

[1] The facts reproduced in this section appear to be undisputed.

[2] Plaintiff objects to the copy of Debenture that is attached to Wells Fargo's Motion on the grounds that it is not the original document and therefore violates the terms of the Debenture and Federal Rule of Evidence 1002. Accordingly, because Plaintiff attached an identical copy of the Debenture to its own brief and does not purport to have the original, the Court will cite to Plaintiff's exhibit when referring to the Debenture.

1

trusts. Wells Fargo acts as the current Trustee of the Trust. The Trust is administered pursuant to an instrument entitled the Living Trust Indenture ("Indenture"). By its terms, the Trust terminated on January 1, 2010. (Wells Fargo Mot., Doc. No. 77, Ex. 2 ¶ IV.E.1.c.) Pursuant to the Indenture, if JHM is alive when the Trust terminates, he then becomes entitled to receive all assets held in the Trust. If he is not living, the Trust assets are to be distributed to his brother, E. Piece Marshall. (*Id*.)

Trof is the corporation formally known as Marshall Petroleum Inc., the obligor under the terms of the Debenture. Pursuant to the Debenture, monthly interest payments of $50,000 were made to the Trustee of the Trust. The most recent of these payments was made on June 1, 2009. Under the terms of the Debenture, on July 1, 2009, an interest payment in the amount of $50,000 became payable to the Registered Holder of the Debenture. In addition, July 1, 2009 is the maturity date of the Debenture, rendering the principal sum of $6,000,000 also due and payable to the Registered Holder. Neither payment was made to Wells Fargo on July 1, 2009.

In 2002, JHM filed for Chapter 11 bankruptcy in the Central District of California ("Bankruptcy Case"). *In re Marshall,* No. 2:02-bk-30769-SB (C.D. Cal. 2002). JHM proposed a Plan of Reorganization, which was approved by the bankruptcy court over the objections of Defendant Bettye B. Marshall Living Trust (the "BBM Trust"), the holder of a judgment against JHM. (Pl. Br., Doc. No. 59, Exhibits 7-8.) The BBM Trust had moved to dismiss the Bankruptcy Case on the grounds that it was brought in bad faith, but this motion was denied by the bankruptcy court, a decision which was then upheld on appeal by the district court. The Plan of Reorganization's confirmation is, however, still subject to challenge by the BBM Trust in an appeal now stayed in the Ninth Circuit.

Plaintiff filed this interpleader claim against JHM, the BBM Trust, and several other Defendants. The property subject to this interpleader, totaling $6,071,666.71, is money that became due and payable to the Trustee of the Trust on July 1, 2009. (Pl. Compl., Doc. No. 1, ¶ 28.) Plaintiff claims that it may be subject to multiple liability with respect to the funds because of rival claims by creditors of JHM holding unsecured claims in connection with the Bankruptcy Case. As of the date of this Order, four defendants have filed claims against the interpleaded property. Wells Fargo has now moved for summary judgment, alleging that it is the only claimant legally entitled to the interpleaded funds. This Court has jurisdiction pursuant to 28 U.S.C. Section 1335.

## II.    LEGAL STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*. Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g.*, *Eason v. Thaler*, 73 F.3d 1322, 1325

(5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Cross motions for summary judgment do not alter the basic Rule 56 standard; instead the Court must determine whether either of the parties deserves judgment.

## III. ANALYSIS

Wells Fargo argues that, under the express terms of the Debenture, Plaintiff became obligated to pay the Trustee of the Trust $6,000,000 in principal plus interest on July 1, 2009. According to Wells Fargo, because it is the Trustee of the Trust, it is the obligee under the terms of the Debenture and is therefore the only party entitled to receive the funds paid into the Court registry. Wells Fargo also argues that, as a matter of law, none of the competing claimants is entitled to receive all or part of the interpleaded funds.

### A. Is Wells Fargo Entitled to receive $6,000,000 in principal and a $50,000 interest payment under the terms of the Debenture?

As to Wells Fargo's first contention that is it the only party entitled to receive the interpleaded funds under the terms of the Debenture, Plaintiff offers two arguments in response. First Plaintiff argues that a genuine issue of fact remains as to whether Wells Fargo is the "Registered Holder" of the Debenture. Because the exact terms of the Debenture state that Plaintiff is only obligated to pay the Registered Holder, Plaintiff argues that Wells Fargo has not shown that it is entitled to these funds as a matter of law. Second, Plaintiff argues that, under the Debenture, the promise to pay the principal sum of $6,000,000 is subject to the Registered Holder's presentation and surrender of the

4

original Debenture. Because Wells Fargo has not made a proper presentment and surrender of the original Debenture in fulfillment of this condition precedent, Plaintiff argues, a genuine issue of fact remains as to Wells Fargo's claim. Each of these arguments will be considered.

### 1. Is Wells Fargo the Registered Holder?

Plaintiff first argues that there is a genuine issue of fact as to whether Wells Fargo is the Registered Holder of the Debenture. The Debenture as assigned on May 2, 1989 indicates that the Registered Holder is Harvey Sorensen, as original Trustee of the Trust. However, as Wells Fargo points out, Plaintiff admits in its Complaint in Interpleader that "the money subject to this interpleader is money becoming due and payable to the Trustee" of the Trust on July 1, 2009. (Compl. in Interpleader, Doc. No. 1, ¶ 28.) Indeed, Plaintiff states several more times in its Complaint that the interpleaded money is due and payable to the Trustee of the Trust. (*Id*. ¶¶ 31, 36, 38.) Thus, Plaintiff has admitted in its original Complaint that the interpleaded property did become due and payable to the Trustee under the terms of the Debenture, and does not now raise a question as to whether Wells Fargo is in fact acting as the current Trustee of the Trust. Therefore, Plaintiff cannot legitimately argue that a question remains as to whether Wells Fargo is the Registered Holder of the Debenture. The face of its pleadings admit that the Trustee of the Trust, to whom the Debenture funds became due and payable on the July 1, 2009, is the Registered Holder.

Furthermore, the Debenture clearly provides that the Registered Holder of the Trust is Harvey Sorensen, *in this capacity as Trustee of the Trust*. (Pl. Resp. Ex. B at 1.) The Trust goes on to say that, upon the resignation of the Trustee, each successor Trustee

"shall possess all of the rights, powers, authority, and discretion" and be subject to "the same duties and obligations" as are conferred upon the original Trustee. (*Id.* at 18.) Thus, that the original Debenture names Mr. Sorensen as the Registered Holder does not, in any way, diminish the rights of Wells Fargo as a successor Trustee.

In addition, as Wells Fargo points out, Plaintiff has treated Wells Fargo in its capacity as the Trustee of the Trust as the Registered Holder of the Trust for several years. Plaintiff has made monthly interest payments in the amount of $50,000 to Wells Fargo, including the most recent payment made in June 2009. Because, under the terms of the Debenture, these monthly interest payments were to be made to the Registered Holder of the Debenture, Plaintiff has demonstrated through its actions that the Trustee of the Trust, currently Wells Fargo, is indeed the Registered Holder of the Debenture. (Pl. Resp. Ex. B ¶ 2.2.) Indeed, not a single competing claimant in this action bases its claim to the interpleaded funds on the fact that it, rather than Wells Fargo, is the Registered Holder of the Debenture. Accordingly, the Court concludes that Well Fargo is indeed the Registered Holder of the Debenture.

### 2. Has Wells Fargo complied with the necessary condition precedent?

Plaintiff also argues that summary judgment is inappropriate because Wells Fargo has not satisfied the condition precedent to his recovery of the principal sum of $6,000,000, namely the surrender of the original Debenture to Plaintiff. (Pl. Resp. Ex. B at 1.) Absent this surrender, argues Plaintiff, a genuine issue of fact remains as to Well Fargo's right to recovery.

Wells Fargo does not dispute that the text of the Debenture appears to condition the Registered Holder's entitlement to the principal sum upon "presentation and

6

surrender" of the Debenture. Instead, Wells Fargo makes two arguments for why it should not be bound by this provision. First, Wells Fargo points out that, because an interest payment of $50,000 was also due on July 1, 2009, which was not paid, Plaintiff is in default under the terms of the Debenture and the principal is therefore "due and payable immediately." (Pl. Resp. Ex. B ¶ 6.2.) Therefore, argues Wells Fargo, surrender of the original Debenture is not necessary in this instance.

While Wells Fargo may be correct that Plaintiff's failure to make an interest payment on July 1, 2009 constitutes the occurrence of a default,[3] the terms of the Debenture require that, in order to accelerate payment in the event of a default, the Registered Holder must provide notice to the obligor declaring the principal and interest to be due and payable. (Pl. Resp. Ex. B ¶ 6.2.) Upon such a declaration, the sums become due and payable immediately. (*Id*.) It is not clear to the Court, and Wells Fargo has offered no evidence, that such a declaration was made in this case, or that it provided Plaintiff with notice of any kind that its expectation of payments due on July 1, 2009 was based on an event of default. As such, the Court cannot conclude that the default provisions of the Debenture may now be used to override the condition stated in the Debenture that the principal is due "upon presentation and surrender of this Debenture." (*Id*. at 1.)

Second, Wells Fargo argues that presentation and surrender of the original Debenture would be futile because Plaintiff has already deposited the necessary sums into the Court registry. Because the tender of these funds of "unconditional," argues Well

---

[3] Plaintiff argues that the default provisions of the Debenture do not actually apply in this case, because the sums due on July 1, 2009 had not yet become payable. The Court's analysis does not require it to conclusively decide the question of whether an event of default occurred under the Debenture, and thus it declines to do so.

7

Fargo, it is no longer seeking payment of these funds directly from Plaintiff, and presentment and surrender to Plaintiff is therefore unnecessary.

Wells Fargo's argument, however, misses the mark. Although Plaintiff has in fact deposited the disputed funds into the Court registry, as required by a statutory interpleader action, it is still incumbent upon Wells Fargo to demonstrate that, as a matter of law, it is entitled to these funds. It is apparent that, under the terms of the Debenture, Wells Fargo, as Trustee of the Trust, is entitled to collect the principal sum of the Debenture only upon presentation and surrender the original Debenture. (Pl. Resp. Ex. B at 1.) If it has failed to meet this requirement, it cannot be lawfully entitled to the interpleaded amount regardless of whether it seeks this amount from the Court or directly from the Plaintiff.

Moreover, the Court is unpersuaded by Wells Fargo's argument that Plaintiff's attempt to influence the Court's determination of who should be entitled to the funds is improper in light of its status as an interpleader Plaintiff.[4] Federal courts have recognized a general rule that in order for an interpleader plaintiff to recover an award of attorneys' fees from the interpleaded funds, he must be a "disinterested" stakeholder, or have no interest in who receives the funds. *See, e.g.*, *Ware v. Anderson*, 2010 WL 670031, at * 1 (E.D. Tenn. Feb. 22, 2010). However, outside the context of requests for fees, courts have recognized that parties bringing interpleader actions under 28 U.S.C. Section 1135 may be interested parties. *See Lummis v. White*, 629 F.2d 397, 402-03 (5th Cir. 1980) (recognizing that the administrator bringing the federal interpleader action was an

---

[4] The Court does note, however, that in this instance the motivations of Plaintiff in opposing Wells Fargo's Motion are somewhat questionable, because it appears that the other individual claimants in this action are closely affiliated with Plaintiff. On this basis alone, however, the Court cannot disregard the language of the Debenture indicating that presentment and surrender are necessary for recovery of the funds.

8

interested stakeholder, not a disinterested one, and that his citizenship could therefore be considered for purposes of establishing minimal diversity). Here, Plaintiff's attempt to defeat Wells Fargo's Motion clearly establishes that it is an interested stakeholder, which precludes it from recovering attorneys' fees from the interpleaded funds. However, it does not render its argument against Wells Fargo's entitlement to the funds improper. As such, the Court concludes that, under the terms of the Debenture, Wells Fargo must present and surrender the original Debenture to Plaintiff in order to demonstrate its entitlement to the sums that became due and payable on July 1, 2009.

Wells Fargo states unequivocally in its brief that it has custody of the original Debenture and stands ready to present and surrender it upon this Court's order. (Well Fargo Br., Doc. No. 84, at 8.) Wells Fargo also provides a declaration in support of this contention. (*Id*. Ex. 15.)[5] Plaintiff asserts in its brief only that Wells Fargo has not as of yet presented the original Debenture and that this creates a fact issue as to whether it has a legally recognizable claim. However, neither Plaintiff nor any of the claimants produces any evidence to suggest that Wells Fargo is unable to surrender the original document. Absent any evidence to contradict Wells Fargo's assertion that it stands ready and able to surrender the Debenture, the Court cannot find that a fact issue remains as to whether Wells Fargo is able to fulfill the condition stated under the Debenture's terms. Accordingly, the Court now orders Wells Fargo to present and surrender the original Debenture to Plaintiff according to the terms stated therein. Provided that Wells Fargo is

---

[5] Plaintiff filed an objection to Wells Fargo's Exhibit 15 on the grounds that it is conclusory and discusses matters about which the declarant has no personal knowledge. (Doc. No. 92 at 2.) The Court finds that the declarant in Exhibit 15 testified only to matters about which she does have personal knowledge, and holds that this evidence is therefore admissible.

9

able to do this, it has demonstrated that, in its capacity as the Trustee of the Trust, it has a valid claim to the interpleaded funds.

### B. Are there any valid competing claims?

Wells Fargo also alleges that, as a matter of law, none of the other competing claimants in this action have asserted valid claims to part or all of the funds. Aside from Wells Fargo, there are three parties that have asserted competing claims to the interpleaded funds. The claims of E. Pierce Marshall Jr. ("Pierce Jr.") and that of Preston Marshall ("Preston") are identical, and will be considered together. In addition, the BBM Trust has also asserted a competing claim to the funds. Where applicable, these three parties will be collectively referred to as the "Competing Claimants."

#### 1. Claims of Pierce Jr. and Preston

The Claims of Pierce Jr. and Preston are based on the fact that they are "contingent beneficiaries" under the terms of the Trust. The Indenture provides that, if JHM is living upon termination of the Trust, then "[t]he assets held and administered by Trustee shall inure to the benefit of JHM." (Wells Fargo Mot. Ex. 2, ¶ IV.E.1.a.) The Indenture then goes on to state that, if JHM dies before January 1, 2010, the Trust's date of termination, then the Trustee should distribute the undisposed of the Trust estate to E. Pierce Marshall or to his issue per stirpes if he is not alive. (*Id.* ¶ IV.E.2.)

Accordingly, Pierce Jr. and Preston, as the purported issue of E. Pierce Marshall, are correct that they are contingent beneficiaries of the Trust. Nonetheless, this does not render them proper claimants to the interpleaded funds. First and foremost, the Court has received no notice that JHM is not presently alive, and as such, he is the only beneficiary of the Trust whose rights have vested thereunder. Second, even assuming JHM is no

longer alive, the Indenture provides that it is the Trustee who should distribute the funds to E. Pierce Marshall or his issue. As such, it is the Trustee who is to collect the Trust assets from the Debenture obligor prior to their distribution to the correct beneficiary under the terms of the Indenture. The claims of Pierce Jr. and Preston, therefore, do not take priority over that of the Trustee. Accordingly, Pierce Jr. and Preston have no claim over the interpleaded funds on the basis of their status as contingent beneficiaries of the Trust.

Pierce Jr. and Preston also claim that they are entitled to a fraction of the interpleaded funds because of tort claims made against JHM for the amount of $200,000 each for "tortious interference with inheritance rights." In the action that was filed pursuant to these claims, the presiding judge apparently disregarded the jury verdict in favor of the plaintiffs and entered a take-nothing judgment with respect to the claims. (*See* Am. Answers, Doc. Nos. 51 & 52, at 4-5.) Therefore, neither Pierce Jr. nor Preston has valid judgments in his favor that would enable them to assert a right to a portion of the interpleaded funds. Although they point out that the judgment against them has been appealed, the fact remains that they were unsuccessful in litigating their tort claims against JHM, and are not, therefore, legally entitled to any portion of JHM's assets on the basis of these claims. Accordingly, the Court holds that Preston and Pierce Jr. have no valid claim to the interpleaded funds on the basis of their tortious interference claim against JHM.[6]

2. **Claims of BBM Trust**

---

[6] Even if Pierce Jr. and Preston had such a valid judgment, it would not give them a valid claim to the interpleaded funds under the Indenture's spendthrift provision, discussed further below.

The BBM Trust claims that it is entitled to receive the funds held in the registry of the Court because it has a $10,000,000 judgment against JHM, a beneficiary of the Trust. (BBM Trust Am. Answer, Doc. N. 54, at 4.) Wells Fargo argues that this claim is invalid because it is in direct contravention of the Trust's spendthrift provision.

The Trust's spendthrift provision provides, in part, that the income of the Trust shall not be "subject to the voluntary or involuntary pledge, mortgage, hypothecation, encumbrance, lease, sale, transfer, assignment, disposition, or anticipation by such beneficiary" or be subject to the "debts contracts, obligations, engagements, torts, judgments, or liabilities of such beneficiaries." (Wells Fargo Mot. Ex. 2 at 16-17.) Under Kansas law, a spendthrift provision within a trust is valid. KAN. STAT. ANN. art. 58a-502(a) (2002).[7] Pursuant to a spendthrift provision, a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee before its receipt by the beneficiary. *Id.* art. 58a-502(c). Accordingly, the BBM Trust, as purported creditor of the JHM, the beneficiary of the Trust, cannot collect Trust assets prior to receipt by JHM.

The BBM Trust argues that the spendthrift provision of the Trust is unenforceable because it was renounced by JHM through his actions in the Bankruptcy Case. The Chapter 11 Plan that was confirmed by the court in the Bankruptcy Case (the "Confirmed Plan") states "[t]he Plan will be funded by the Debtor's current assets and cash flow, including, but not limited to earnings from personal services, exempt assets, and distributions from the [Trust]." (BBM Trust Resp., Doc. No. 83, Ex. 7.) As this Court understands it, the BBM Trust's argument is that this provision of the Confirmed Plan

---

[7] The Trust provides that it is to be "construed, interpreted, governed, and controlled" by the law of the State of Kansas. (Wells Fargo Mot. Ex. 2 at 18.)

12

violates the Trust's spendthrift provision and constitutes a renunciation by JHM of his interest in the Trust in favor of his creditors.

This Court disagrees. The language within the Confirmed Plan indicates only that the Plan should be partially funded by distributions made pursuant to the Trust. In other words, under the terms of the Confirmed Plan, JHM is to use his income from the Trust to finance the payments to be made under the Plan. The provision does not instruct that JHM's creditors are to recover payments directly from the Trustee, or that the creditors have a claim to the assets within the Trust that supersede that of the Trustee. As such, the terms of the Confirmed Plan in no way conflict with the spendthrift provision of the Indenture, because, under Kansas law, spendthrift provisions prevent creditors from reaching distributions by a trustee *before* receipt by a beneficiary. KAN. STAT. ANN. art. 58a-502(c). Once the money has been distributed to the beneficiary, the spendthrift provision imposes no limitation upon the manner in which the beneficiary is to use such income. The clear language of the Confirmed Plan states that JHM will use his income from the Trust to finance the Confirmed Plan, meaning that his creditors might ultimately receive Trust proceeds after JHM, the Trust beneficiary, has been given these funds. The Court therefore concludes that the terms of the Confirmed Plan do not conflict with the spendthrift provision of the Indenture or render this provision unenforceable.[8]

---

[8] In their responsive brief, the Competing Claimants also point to a provision within the Chapter 11 Plan that was originally proposed by JHM in the Bankruptcy Case (the "Original Plan"). (*See* BBM Trust Resp., Doc. No. 83, at 6.) The Court cannot conclude that the identified provision in the Original Plan conflicts with the Trust's spendthrift provisions or constitutes a renunciation by JHM of his inheritance rights. Regardless, the Original Plan was never confirmed, and is therefore irrelevant to determining the legal rights of the various claimants in this case.

Accordingly, under the valid terms of the spendthrift provision, the BBM Trust, as a creditor of JHM, has no valid claim to the interpleaded funds.[9]

The Competing Claimants also appear to argue that, because JHM improperly encumbered his interest in the Trust in the Bankruptcy Case in violation of the spendthrift provision, he thereby disclaimed his inheritance. According to their argument, the proceeds of the Trust should therefore go to Preston and Pierce Jr. as the contingent beneficiaries of the Trust. Notably, the Court has already rejected the contention that the Confirmed Plan contains an improper encumbrance of JHM's rights as the beneficiary of the Trust. However, even if the Court were to hold that JHM somehow revoked his inheritance rights, this would still not give any of the Competing Claimants a valid claim to the interpleaded funds. Under the explicit terms of the Indenture, the interests of Preston and Pierce Jr., as the purported issues of E. Pierce Marshall, vest only in the event that JHM is not living upon the day that the Trust terminates. Nothing in the Trust language suggests that an attempt by JHM to encumber his interest in the Trust automatically vests any other party with the rights to the Trust assets. Moreover, if their rights were to vest, Preston and Pierce Jr. would recover these funds from the Trustee of the Trust, or Wells Fargo. Thus, even if the Court were to hold that the Confirmed Plan did constitute a disclaimer by JHM of his inheritance rights, which it does not, the Court has no basis on which to find that any of the Competing Claimants has a valid claim to the interpleaded funds that supersede that of Wells Fargo.

## IV. CONCLUSION

---

[9] Wells Fargo makes the additional argument that the BBM Trust is not a proper claimant to the intepleaded funds because it did not file a proof of claim as required in the Bankruptcy Case. However, because the Court has already invalidated the claims of the BBM Trust under the Trust's spendthrift provision, it need not address this argument.

In accordance with the analysis above, none of the Competing Claimants in this case has a valid claim to the interpleaded funds. Therefore, subject to its undisputed ability to present and surrender the original Debenture, Wells Fargo's Motion for Summary Judgment (Doc. No. 76) is hereby **GRANTED**. Wells Fargo is **ORDERED** to submit to this Court, within 15 days of entry of this Order, an affidavit or declaration stating that the original Debenture has been presented and surrendered to Plaintiff. Upon submission of this document, Wells Fargo will be entitled to the entirety of the interpleaded funds.

**IT IS SO ORDERED.**

**SIGNED** this 3rd day of June, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE